**RESEARCH CORPORATION,**
Plaintiff-Appellant,

v.

**NASCO INDUSTRIES, INC.,**
Defendant-Appellee.

No. 73–1229.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 24, 1974.

Decided June 21, 1974.

Certiorari Denied Dec. 23, 1974.
See 95 S.Ct. 689.

and principal claim asserts invention of:

"1. A method of permanently branding living domesticated animals which comprises applying in a predetermined configuration representing insignia to a selected portion .of the living animal, said selected portion having normal hair length and normal skin, a super-cooled material for a sufficient time to freeze such selected portion and permanently alter the appearance thereof."

The specifications and examples state that the application of a supercooled material, such as dry ice or a metal instrument chilled with dry ice and alcohol or in liquid nitrogen, held in contact with the animal's skin, will cause a temporary loss of hair, followed by a regrowth of white hair in the area frozen, or by a permanent loss of hair if the application of cold is carried to the point of destruction of the hair follicles. The regrowth of white hair is particularly effective for marking animals with dark hair. Examples to illustrate the claimed invention recount the marking of two dogs, a cat, and a cow.

Robert L. Harmon and Clyde F. Willian, Chicago, Ill., for plaintiff-appellant.

William A. Braddock and Robert W. Gutenkauf, Minneapolis, Minn., for defendant-appellee.

Before KILEY, Senior Circuit Judge, CUMMINGS, Circuit Judge, and HOFFMAN, Senior District Judge.*

JULIUS J. HOFFMAN, Senior District Judge.

The plaintiff, assignee of United States Patent No. 3,362,381, has appealed from summary judgment entered against it in a suit for infringement. We agree with the District Court that the patent is invalid, and affirm.

The patent in suit, issued to Dr. Roy Farrell on January 9, 1968, is entitled "Cryogenic Branding of Animals", and describes a method of branding by freezing the skin of the animal. The first

The prior art references noted on the file wrapper include an article by Dr. A. Cecil Taylor published in the Journal of Experimental Zoology, Vol. 110, p. 77 (1949), entitled "Survival of Rat Skin and Changes in Hair Pigmentation Following Freezing". The article describes in detail a series of experiments with laboratory rats. Freezing the skin of the animals with dry ice or with a metal instrument supercooled with dry ice and alcohol was found to produce a permanent regrowth of white hair. on the skin area frozen, or, in case of lethal freezing, to leave the affected area bald. The proffered scientific explanation for the phenomena is that the pigment-producing cells of the hair bud, carrying more moisture than the cells which control hair growth but not color, are more sus-

---

* Senior District Judge Julius J. Hoffman of the Northern District of Illinois is sitting by designation.

ceptible to the formation of destructive ice crystals. Freezing to a limited degree thus has a differential effect, destroying the color-producing cells but not the hair itself, with the result that the hair resumes normal growth but without color, that is, white.

Taylor thus discloses a method for turning the hair of living animals white, in defined and limited areas where the skin is frozen by contact with a supercooled material. This article, published some fifteen years before the plaintiff's patent was applied for, raises the defense of anticipation, denying patentability if "the invention was . . . described in a printed publication . . . more than one year prior to the date of the application for patent. . . ." 35 U.S.C. § 102(b). On this ground, the District Court concluded that the patent was invalid.

The plaintiff contends, however, that the Taylor article does not disclose the use of this method for the purpose of *branding*. Dr. Taylor was concerned with discovering the biological principles at work, and not with the commercial use of his method. His article does not consider the application of his research as a means of marking animals for identification, nor for esthetic purposes. Nonetheless, his writings teach that freezing by contact with a chilled instrument can be used to produce a mark consisting of a growth of white hair in the shape of the applicator.

While it is clear that a process may be patentable even though it is the "new use of a known process" (35 U.S.C. § 100(b)), it is not enough merely to find the latent qualities in an old discovery and adapt it to a useful end, even if others had failed to detect it. General Electric Co. v. Jewel Co., 326 U.S. 242, 249, 66 S.Ct. 81, 90 L.Ed. 43 (1946). Without more, " 'the application of an old process to a new and analogous purpose does not involve invention, even if the new result had not before been contemplated.' " 326 U.S., at 247, 66 S.Ct. at 83; General Radio Co. v. Su-

perior Electric Co., 321 F.2d 857, 862 (3 Cir. 1963), cert. denied 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 695 (1964). "That those who preceded the patentees failed to perceive all the uses to which [their disclosure] was accommodable does not minimize the effect of their disclosures or enhance the claim to patentability." Gould-National Batteries, Inc. v. Gulton Industries, Inc., 361 F.2d 912, 914 (3 Cir. 1966).

Whether a different use for a known process is merely analogous and cognate, and thus not "new", is a question which merges in the decisional process with the question of obviousness. "The application of an old principle to a new use will not gain a patent unless the new use would not have been obvious at that time to a person of ordinary skill in the subject matter art." Skirow v. Roberts Colonial House, Inc., 361 F.2d 388, 390 (7 Cir. 1966). It is not enough that the plaintiff "has merely adapted an old method to a new use by modifications obvious to one skilled in the art, which does not constitute a patentable invention." Scott Paper Co. v. Fort Howard Paper Co., 432 F.2d 1198, 1203 (7 Cir. 1970). See also Grinnell Corp. v. Virginia Electric & Power Co., 401 F.2d 451, 453 (4 Cir. 1968); Preuss v. General Electric Co., 392 F.2d 29 (2 Cir. 1968).

The fact that the Taylor article does not directly describe the end of branding, to qualify as full and absolute anticipation, does not suffice to validate the plaintiff's patent. Under Section 103, a patent is invalid even "though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103. We agree with the District Court that the use of Taylor's method for purposes of mark-

ing an animal for identification would have been obvious from his published article.

 The plaintiff argues, however, that a decision of the question of obviousness cannot be made upon a motion for summary judgment. A patent, duly issued by the Patent Office, enjoys a presumption of validity, and that presumption is reinforced when the prior art was cited and considered by the Patent Examiner. See Schnell v. Allbright-Nell Co., 348 F.2d 444· (7 Cir. 1965), cert. denied 383 U.S. 934, 86 S.Ct. 1062, 15 L.Ed.2d 851 (1966). But the presumption is not factual, requiring the introduction of evidence in every case to overcome it. The "ultimate question of patent validity is one of law . . . ." Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1965). The legal question of obviousness "lends itself to several factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined." 383 U.S., at 17, 86 S.Ct., at 694.

Once these factual inquiries have been made, the question is a pure issue of law. As stated in Erie Technological Products, Inc. v. Die Craft Metal Products, Inc., 461 F.2d 5, 9 (7 Cir. 1972):

> "Of course the patent office must have decided that the subject matter would not have been obvious, and issuance of the patent creates a presumption in its favor. We are to be on guard against deciding that the subject matter of any patent would have been obvious because it has become obvious by hindsight. Although we should, and do, carefully consider the conclusion reached by the district court, the ultimate issue of obviousness under 35 U.S.C. § 103, after it has been refined by performing the steps required by

Graham v. John Deere Co. is one of law."

██ There is nothing in Rule 56 to forbid the use of summary judgment procedures to determine whether a genuine issue of fact exists, concerning the factual foundation for determination of the ultimate issue of law: obviousness. Although care must be exercised to assure that controverted fact issues are not ignored, see Tee-Pak, Inc. v. St. Regis Paper Co., 491 F.2d 1193 (6 Cir. 1974), " . . . a suit concerning the validity of a patent over the prior art is not immune from disposition on motion for summary judgment even though, in addition to prior art patents, deposition testimony of the applicant and affidavits are involved, if no genuine issue of material fact is present." A R Inc., v. Electro-Voice, Inc., 311 F.2d 508, 511 (7 Cir. 1962). "Further, it is well settled that, in a proper case, the validity of a patent may be determined by use of summary judgment." Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 356 F.2d 442, 446 (7 Cir. 1966), cert. denied 384 U.S. 950, 86 S.Ct. 1570, 16 L.Ed.2d 547 (1966).

 Here there was no factual dispute concerning the state of the prior art, as recorded in the Taylor article. The differences between the method there disclosed and the claimed invention are plainly discernible from the documents, and involve principally the shape of the area of skin upon which the supercooled material is applied to turn the hair white. The plaintiff improves upon the Taylor method only by altering the hair color in a predetermined configuration, rather than in the fortuitous shape of the supercooled material applied for purposes of research rather than identification. Under such circumstances, the District Judge correctly concluded that no genuine issue of fact remained. A full trial, for the sole purpose of hearing expert testimony on the level of ordinary skill in the art, could not have aided the court in resolving the legal question of obviousness, and the

court could properly rule on that issue "without the taking of testimony from experts in the pertinent area of knowledge." Monaplastics, Inc. v. Caldor, Inc., 378 F.2d 20, 21 (2 Cir. 1967) ; Trico Products Corp. v. Roberk Company, 490 F.2d 1280, 1281–1282 (2 Cir. 1973). "Rule 56 applies to patent cases and is used in those instances where the structure and mode of operation of the accused device may be readily comprehended by the court and compared with the invention described and claimed in the patent without need of technical explanation by expert witnesses." Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 356 F.2d 442, 447 (7 Cir. 1966), cert. denied 384 U.S. 950, 86 S.Ct. 1570, 16 L.Ed.2d 547 (1966).

In opposition to the motion, the plaintiff presented a declaration prepared in support of the plaintiff's application for a British patent, signed by Dr. Taylor, stating that it did not occur to him, from the work described in his article, that his methods could be employed for branding, and stating his belief that such a use would not have been obvious. The District Court concluded that this evidence raised no genuine issue of fact, and could not salvage the patent. The Supreme Court reached a similar conclusion in Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969), where the Court held the patent invalid as a matter of law despite the evidence of two expert witnesses that they had not believed the claimed invention would work. The plaintiff also offered affidavits tending to show a need for an improved method of branding, to eliminate the disadvantages of hot branding; the failure to find such a means, in a British contest wth 3,000 entries; the commercial success of freeze branding, as revealed by numerous inquiries and licenses; and skepticism, as evidenced by resolutions adopted by two cattlemen's associations, recording their doubts about the permanence, economy, and practicality of the method. These factors are useful makeweights in doubtful cases, and may tip the scales when otherwise evenly balanced. They serve to induce a becoming intellectual modesty on the part of the judiciary, and to limit the temptation to judicial hindsight, all as discussed in Graham v. John Deere Co., 383 U.S. 1, 35–37 (1965). But such evidence did not in that case deter the Supreme Court from concluding that the claimed invention was obvious as a matter of law, and the patent invalid. A failure to consider such secondary factors, in the face of the evident lack of difference, would not constitute reversible error. Scott Paper Co. v. Fort Howard Paper Co., 432 F.2d 1198, 1203–1204 (7 Cir. 1970). Here the evidence was presented and considered, albeit in documentary form. Since much of it was inherently documentary, there is no reason to suppose that the evidence would have a different impact if it were presented in a trial rather than in summary judgment proceedings. The District Judge afforded the plaintiff every opportunity to meet its burden in opposing the motion under Rule 56(e), even to the extent of allowing an additional affidavit to be filed long after the motion had been taken under advisement.

█ We agree with the court below in its conclusion that no genuine issue of material fact is presented, and that the defendant is entitled to judgment as a matter of law, under Rule 56. Giving full credence to the plaintiff's factual assertions, there remains the implacable and undisputed fact that the plaintiff has added nothing to the Taylor disclosures beyond recognizing that the resultant markings could be made in a pattern or design, useful for identification. While this application of the disclosed method may avoid the strict defense of anticipation under § 102, it was nonetheless obvious within the meaning of § 103, and the District Court did not err in adjudging the patent to be invalid.

Our affirmance on the ground of invalidity makes it unnecessary to consider the alternative ground of the judgment below: that the defendant has avoided infringement by confining freeze

branding to skin from which the hair has first been removed by clipping. For purposes of further appeal, it is enough to record our doubt concerning the District Court's narrow interpretation of the claim, in light of the mentions of pre-clipping, both in the patent specifications and examples, without resolving that doubt.

Affirmed.