**BROOKFIELD ATHLETIC SHOE COMPANY, INC., Plaintiff,**

v.

**CHICAGO ROLLER SKATE COMPANY and Red Stone Enterprise Company, Ltd., Defendants.**

No. 83 C 5301.

United States District Court, N.D. Illinois, E.D.

Nov. 27, 1984.

J. William Hayton, Bell, Boyd & Lloyd, Chicago, Ill., John N. Williams, Frank P. Porcelli, Timothy A. French, Fish & Richardson, Boston, Mass., for plaintiff.

Richard Bushnell, Trexler, Bushnell & Wolters, Ltd., Chicago, Ill., for respondent.

### ORDER

BUA, District Judge.

This cause is before the Court on the motion of defendants Chicago Roller Skate Company ("Chicago") and Red Stone Enterprise Company, Ltd., for summary judgment on the ground that (1) Chicago's roller skate, Exhibit 17, does not infringe the design patent in suit, U.S. Patent Des. No. 261,542, owned by the plaintiff Brookfield Athletic Shoe Company, Inc.; (2) the patent in suit, No. 261,542, is invalid for the reasons enumerated in 35 U.S.C. §§ 102, 103 and 171; and (3) defendant is entitled to all of its costs, expenses, and attorneys' fees pursuant to the provisions of 35 U.S.C. § 285.

Defendants' motion has been fully briefed with memoranda supported by evidence produced through discovery, including depositions of expert witnesses and others. In accordance with 28 U.S.C. § 636(b)(1)(B), the Court referred the motion for summary judgment to the Executive Committee for designation of a magistrate to hear it and submit recommendations for disposition. Magistrate Joan H. Lefkow was designated; and on November 5, 1984, she filed a report which discloses a careful analysis of the issues and a resolution of them which the Court finds is amply supported by the record. Magistrate Lefkow has made recommendations for disposition of defendants' motion for summary judgment which the Court finds are supported by the authorities. Therefore, it adopts Magistrate Lefkow's report as its memorandum opinion; and on the authority of 28 U.S.C. § 636(b)(1)(C), the parties having had opportunity to file objections, the Court accepts in whole Magistrate Lefkow's recommendations, incorporates her report into this order making it a part hereof as Appendix A, and orders that:

1. The motion for summary judgment of the defendants Chicago Roller Skate Company and Red Stone Enterprise Co., Ltd., is granted on the question of infringement, and the Court finds that the roller skate in question, Exhibit 17, does not infringe the design patent in suit, U.S. Patent Des. No. 261,542.

2. Defendants' motion for summary judgment on the question of the validity of plaintiff's design patent is denied, and the Court finds that U.S. Patent Des. No. 261,542 is valid under 35 U.S.C. §§ 102, 103 and 171.

3. As recommended by Magistrate Lefkow, defendants' request for an award of attorney fees and costs is denied.

IT IS SO ORDERED.

## APPENDIX A

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION

BROOKFIELD ATHLETIC SHOE COMPANY, INC., Plaintiff,

v.

CHICAGO ROLLER SKATE COMPANY and RED STONE ENTERPRISE COMPANY, LTD., Defendants.

83 C 5301

TO: The Honorable NICHOLAS J. BUA United States District Judge

### MAGISTRATE'S REPORT AND RECOMMENDATION

This is an action for infringement of a design patent. Pending is defendants' motion for summary judgment asserting invalidity and non-infringement.

Brookfield Athletic Shoe Company (Brookfield) is a Massachusetts manufacturer of athletic footwear. In the late 1970's, Brookfield began to manufacture and sell roller skates of its own design. In 1981, it patented a particular skate design, U.S. Des. No. 261,542 ("the patent", "the patent in suit"). The patented design, entitled "Integral Shoe Sole and Wheel Mounting for Roller Skate" (Defendants' Exhibits 1, 14), has the appearance of a wheel mounting plate with multiple angled bosses to secure the skate wheels. The element that connects the skate boot to the wheel mounting is of a wedge shape, with the heel end slightly raised. The "wedgee" sole and wheel mounting plate are constructed in one piece. It is this patent that the defendants have allegedly infringed.

Defendant Chicago Roller Skate Company (Chicago) is a roller skate manufacturer. In 1979 Chicago began purchasing for distribution in the United States an inexpensive outdoor sidewalk skate from the defendant Red Stone Enterprises (Red

Stone), a Taiwan manufacturer. This skate (Defendants' Exhibit 17) has a plate with multiple angled bosses for wheel mounting. The aspect that connects the plate to the skate boot is of an exaggerated wedge shape with an extra wedged piece inserted directly under the heel. These elements are combined in one integrated piece. Defendants first contend that the patent is invalid because the design lacks the necessary requirements of novelty and nonobviousness under 35 U.S.C. §§ 102 and 103. Second, even if the patent is valid, defendants contend the Chicago design does not infringe because it is so different from the Brookfield design that the ordinary observer would readily distinguish the two skates. Last, Red Stone individually contends it has not committed an act of infringement within the United States. Defendants also seek attorney's fees under 35 U.S.C. § 285 on the grounds that this is a spurious law suit.

### I. VALIDITY OF THE DESIGN PATENT

A patent, once granted, is presumed valid. 35 U.S.C. § 282. That presumption is strengthened if all the pertinent prior art was before the Patent Office and considered by the examiner in issuing the patent. *Laser Alignment, Inc. v. Woodruff & Sons, Inc.*, 491 F.2d 866, 871 (7th Cir.1974), *cert. denied*, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974). The examiner need not cite all the prior art, for "it is presumed that the examiner considered the [uncited] art and discarded it as being no more pertinent than that cited by him." *Panduit Corp. v. Burndy Corp.*, 517 F.2d 535, 538 n. 2 (7th Cir.1975), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975). A challenger may overcome the presumption of validity only by clear and convincing evidence to the contrary. *Medical Laboratory Automation Inc. v. Labcon, Inc.*, 670 F.2d 671, 674 (7th Cir.1981); *Astra-Sjuco, A.B. v. International Trade Commission*, 629 F.2d 682, 688, 67 C.C.P.A. 128 (1980).

The patent in suit claims to be an "ornamental design for an article" under

35 U.S.C. § 171 (1982). A design patent encompasses not the function of an invention, but rather its distinctive appearance. *Contico International v. Rubbermaid Commercial Products, Inc.,* 665 F.2d 820, 823 (8th Cir.1981). For a design patent to be valid, it must meet the statutory requirements of novelty and nonobviousness under 35 U.S.C. §§ 101–103.[1] *Contico,* 665 F.2d at 823.

### A. *Novelty*

The burden of proof is on the defendant to show by clear and cogent evidence that the design is not novel. *Illinois Tool Works, Inc. v. Continental Can Co.,* 273 F.Supp. 94, 106 (N.D.Ill.1967), *aff'd,* 397 F.2d 517 (7th Cir.1968). Novelty of the design is a requirement under sections 101 and 102.[2] Statutory novelty requires that an invention be something "new". *Graham v. John Deere Co.,* 383 U.S. 1, 12, 86 S.Ct. 684, 691, 15 L.Ed.2d 545 (1966). Put simply, there must be a difference between each prior art reference and the patented design for it to be deemed "new". *Roberts v. Sears, Roebuck & Co.,* 723 F.2d 1324, 1332 (7th Cir.1983). The essence of the patented design must not have been disclosed in the prior art. *Id.* Novelty requires a determination that the patented invention has not, in fact, been made before. *Malsbary Manufacturing Co. v. Ald, Inc.,* 310 F.Supp. 1112, 1115 (N.D.Ill.1970), *aff'd,* 447 F.2d 809 (7th Cir. 1971); *Illinois Tool Works,* 273 F.Supp. at 104. No invention can be considered novel if it is substantially identical to a prior invention. *Briggs v. Wix Corp.,* 308 F.Supp. 162, 168 (N.D.Ill.1969).

The novelty of a design patent is to be determined by its impact upon the ordinary observer. Novelty is established if the "average observer takes the new design for a different, and not a modified already existing design." *Contico,* 665 F.2d at 823, *quoting Thabet Manufacturing Co. v. Kool Vent Awning Corp.,* 226 F.2d 207, 212 (6th Cir.1955). *See also Clark Equipment Co. v. Keller,* 570 F.2d 778, 799 (8th Cir.1978); *Schnadig Corp. v. Gaines Manufacturing Company, Inc.,* 494 F.2d 383, 389 (6th Cir.1974).

A new combination of elements already existing in the prior art into a single product can be novel. *Bela Seating Co. v. Poloron Products, Inc.,* 438 F.2d 733, 736 (7th Cir.1971); *see Medtronic, Inc. v. Cardiac Pacemakers, Inc.,* 555 F.Supp. 1214, 1217 (D.Minn.1983). However, a combination of old elements will be carefully scrutinized to determine its novelty. *Skil Corp. v. Rockwell Manufacturing Co.,* 358 F.Supp. 1257, 1259 (N.D.Ill.1973), *aff'd in part, rev. in part sub. nom, Skil Corp. v. Lucerne Products, Inc.,* 503 F.2d 745 (7th Cir.1974).

In considering the novelty of the patent in suit the court takes the position of the "average observer" and must determine if the design is a truly "new" design and not a modification of a design existing in the prior art. The patent in suit claims to be an "integral shoe sole and wheel mounting for [a] roller skate". Defendants' Exhibit 1 at 1; Exhibit 2 at 2. The illustrations (Defendants' Exhibit 1), the photographic representations (Defendants' Exhibit 14a–d), and the physical example of the patented design (Defendants' Exhibit 14), demonstrate that from the side view the roller

---

1. Generally, utility patents must meet three statutory requirements: utility, novelty and nonobviousness. 35 U.S.C. §§ 101–03 (1982); *Graham v. John Deere Co.,* 383 U.S. 1, 14, 86 S.Ct. 684, 692, 15 L.Ed.2d 545 (1966). However, because a design patent protects "not the *function* of the invention ... but rather ... [the] peculiar or distinctive appearance ... [of the] article", utility is not an element of design patentability. *Contico,* 665 F.2d at 823. Utility, by its very definition, is irrelevant in the design patent context. *Id.* at 823 n. 7.

2. Section 101 states any invention or discovery must be "new" and "useful". 35 U.S.C. § 101 (1982). Sections 102(a), (e), and (g) are construed to provide that a device lacks novelty if it is anticipated by a prior patent or publication in this or a foreign country or by prior use, knowledge or invention in this country. *Roberts v. Sears, Roebuck & Co.,* 723 F.2d 1324, 1332 (7th Cir.1983).

skate has a gradually rising wedge-shaped sole. It is molded in one piece with the wheel mounting plate. The plate has multiple angled bosses with rounded contours to which the wheel elements attach. From the other views, bottom, front and rear, one sees that the wedged sole is quite wide, like that of a standard shoe sole, spanning the width of the skate shoe at all aspects.

The prior art cited by the Patent Office consists of four patents: Covell No. 116,-161, Miller Des. 143,983, Coldwell Des. 162,129, and Ware No. 3,180,651. The Covell patent (Defendants' Exhibit 3), issued in 1871, is for a wheel mounting of fairly uniform thickness with curved "trucks" that attach to the wheels. It claimed to improve the skate's capacity for "describing circles of greater or lesser radius". The design in suit is obviously different from the design of the Covell skate. The Miller design patent (Defendants' Exhibit 4) is for a flat wheel mounting plate with curved angled bosses to attach the wheels. The main difference from the patent in suit is the clear absence of a boss to secure a toe stop. The Coldwell design patent (Defendants' Exhibit 5) is also a flat wheel mounting plate, but it has very shallow, sharply angled bosses for wheel attachment. This, as well as the absence of a boss for a toe stop, differentiates it from the patent in suit. The Ware patent, similarly to the patent in suit, is for a wheel mounting plate with angled bosses and a toe stop structure (Defendants' Exhibit 6). The patent in suit is different from the

Ware patent in that the Ware patent bosses have less contour than the patent in suit. Further, the patent in suit integrates a wedge sole into this wheel mounting. This is a major distinction from the Ware patent.

Defendants request that the court consider other prior art in the same patent classification as the patent in suit, art that was not cited by the Patent Office. Although most can be dismissed summarily as discernibly different to the average observer from the design in suit,[3] the court notes one design in greater detail, the Sanders Patent 4,328,627 (Defendants' Exhibit 13). The Sanders patent is for an adjustable skating shoe. The shoe has a wedged sole. In the sole is embedded a structural beam to allow a variety of attachments for use of the shoe for roller skating, ice skating, skiing or climbing. When assembled as a roller skate, it is different from the patent in suit because even though it does fit together a wedged sole and a wheel mounting plate, that plate is rather flat in contour and the two elements are not *constructed* in a unitary structure. This is a marked difference even to the average observer.

Turning now to the legal issues, the court must first decide whether a genuine issue of material fact is presented making summary judgment inappropriate. Plaintiff asserts no genuine issue of fact on the issue of novelty. The patented design is comparatively simple; the court has before

---

**3.** The court finds these patents distinguishable from the patent in suit: The Dobson patent No. 250,059 (Defendants' Exhibit 7) seems to be suggested for the slightly wedged sole of this "clog-skate" design. However, this design includes no wheel mounting and is thus different. The Meyer patent No. 2,998,260 (Defendants' Exhibit 8) is for a rather clumsy looking shoe, with somewhat of a wedged heel, that can interchange from a roller to an ice skate with its convertible flat mounting. This is clearly a different concept, for the patent in suit constructs a wedged sole and a contoured wheel mounting with angled bosses for wheel mounting into one integral unit.

The Ware patent No. 3,862,763 (Defendants' Exhibit 9) is for a functional improvement to a wheel mounting plate with a toe stop. While it

may appear similar to the wheel mounting aspect of the patent in suit, the patent in suit integrates a wedged skate sole and is thus distinguishable. The Ware, Jr., patent No. 4,058,323 (Defendants' Exhibit 10) is different for the same reason.

The Kimmel patent No. 4,138,127 (Defendants' Exhibit 11) is for a skate boot and wheel mounting constructed together attached to two wheels instead of the conventional four. It is clearly different to the average observer. The Stevenson patent No. 4,146,241 (Defendants' Exhibit 12) is for a roller skate boot that snaps on to a wheel truck. It is clearly different in that there is no wedged sole involved, nor does the wheel plate have multiple angled bosses to attach the wheels.

it the necessary prior art and is capable of examining it without expert testimony. *Harvestall Industries, Inc. v. Hochstetler,* 656 F.2d 1232, 1234–35 (7th Cir.1981). Thus, the court finds that a trial would add nothing to illuminate the facts necessary to a decision and that the issue of novelty can be decided as a matter of law.

 Having observed all the prior art from the standpoint of the ordinary observer, the court finds that the design patent in suit meets the statutory requirement of novelty. It is different from all the prior art in that it integrates a wedge sole into a wheel mounting plate in a unitary construction. Although the prior art includes wedge soles and similar mounting plates, no prior design combined the two elements into one piece in this way. Rather, the prior art maintained the distinctness of these elements.

B. *Nonobviousness*

The second element that must be satisfied to establish design patent validity is whether the patented design was not obvious, that is, not in some way suggested by the previous designs in the particular subject matter. If the design is obvious, the patent is invalid. The statutory provision regarding obviousness states, in pertinent part,

A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been *obvious* at the time the invention was made *to a person having ordinary skill in the art* to which said subject matter pertains.

35 U.S.C. § 103 (emphasis added).

 Novelty and nonobviousness are distinct concepts. *Lemelson v. Topper Corp.,* 450 F.2d 845, 848 (2d Cir.1971). Where novelty only requires ascertaining the average observer's impression of the "newness" of the design as compared to the prior art, nonobviousness has the more rigorous standard of whether a person skilled in the art would find that the design was suggested by the prior art. The prop-

er test for a combination of elements known in the art is whether the prior art suggests to one ordinarily skilled in the art doing what the applicant has done. *Farmhand, Inc. v. Lahman Manufacturing Co., Inc.,* 192 USPQ 749, 760 (D.S.D.1976), *aff'd,* 568 F.2d 112 (8th Cir.1978), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). To ascertain nonobviousness under § 103, the court must consider several questions. The scope and content of the prior art must be determined; the differences between the prior art and the claims at issue must be ascertained; and the level of ordinary skill in the pertinent art must be resolved. *Graham,* 383 U.S. at 17, 86 S.Ct. at 693. *National Business Systems, Inc. v. AM International, Inc.,* 743 F.2d 1227, 1233 (7th Cir.1984).

Defendants argue that the prior art shows that the patent design was an obvious combination of prior design elements, thus invalidating the patent in suit. They assert that a wedge shaped sole was not a new design but had been used for some time and that a wheel mounting plate with a central rib and angled bosses was similarly an old idea. They argue the combination of a wedged sole with such a wheel mounting plate would be an obvious combination of the existing art to one of ordinary skill in the art. In support of these contentions, the defendants depend on the exhibits of the prior art and hypothetical combinations thereof. They suggest that combining the shoe sole of the Meyer, Kimmel or Sanders designs with the wheel mounting plates of Ware No. 4,058,323, Brookfield's "prior art skate" (Defendants' Exhibit 15), or Chicago's die cast metal sole plate (Pat. No. 4,058,323, Defendants' Exhibit 22), suggests the design patent in suit.

The combinations were created by Gordon K. Ware, president of Chicago. The record reflects that he is well qualified to speak as one skilled in the art of roller skate design. In an affidavit, Ware states that in his opinion these combinations were obvious. Plaintiff counters with its own well qualified witness skilled in the art, David Landay, co-inventor of the patent in

suit and the president of Brookfield. In his affidavit Landay states that he considered the prior art and the hypothetical combinations suggested by the defendants and it was his opinion that the integral combination of the wedge sole and the wheel mounting was *not* obvious. He gave detailed reasons as to why this combination was not apparent from the prior art. Both of these witnesses, of course, are closely associated with a party, indicating a lack of neutrality on both their parts.

Plaintiff also points to Even Hsieh, the designer of the allegedly infringing skate in support of its contention of nonobviousness. Mr. Hsieh, together with Ware, patented a similar idea in (utility) patent No. 4,357,028 in November, 1982. In his deposition, Hsieh stated that his skate's new contribution to the art was the wedge contour of the sole. Moreover, Ware and Hsieh, seeking a U.S. patent for the skate, listed among the application claims that the design was for a

> shoe structure; a *unitary sole* having a bottom surface and an upper surface adapted to receive said shoe structure, said sole plate defining a toe portion, a heel portion, and an instep portion there between; and a truck assembly secured to said sole plate bottom surface at said heel portion and at said toe portion, said upper surface of said sole plate, *heel portion being raised with respect to said toe portion* so as to form a heel in said sole plate for the shoe structure.

Plaintiff's Exhibit 10 ¶ 23 (emphasis added). This claim does suggest that, contrary to their assertion here, Ware and Hsieh considered the integration of the mounting with a wedge sole a nonobvious idea.[4]

Further, plaintiff asserts that Hsieh, in his Taiwanese design patent application for this same design, suggested that the integration of a wedge sole with a wheel mounting was patentable because the description in the application was, in Mr. Hsieh's words, for a *"new design* of the roller skates with the rear outsole of its

boot *integratedly* combined to the foot plate of roller skate chassis. It characters the roller skate with *integrity,* convenience and perfection." Plaintiff's Exhibit 12 at 109. *See also* Plaintiff's Exhibit 11, Application at ¶ 5.

Plaintiff argues that the conflict in the affidavits of Ware and Landay presents a genuine issue of fact concerning whether the prior art suggested the present invention to a person of ordinary skill. Patent cases are in most circumstances unsuited for resolution by summary judgment, for they ordinarily involve determinations of fact regarding, for example, the scope and content of the prior art. *Harvestall Industries, Inc. v. Hochstetler,* 656 F.2d at 1234. A determination of validity on a summary judgment motion is appropriate, however, where no material fact issue pertinent to the outcome of the case is raised and no expert testimony is necessary to illuminate the court on the design in dispute. *Harvestall Industries,* 656 F.2d at 1234–35. This is particularly true if the patented design is relatively simple and the court is capable of examining the prior art on its own. *Id.* Further, where the veracity of the facts is not in issue, and the court has before it all the pertinent prior art, the determination of obviousness is a question of law. *Beatrice Foods Co. v. Tsuyama Manufacturing Co.,* 619 F.2d 3, 5 (7th Cir.1979). But summary judgment should not be granted if the technical aspects of the design are not readily comprehended by one unskilled in the art, if the record is inadequate, if there is a need for expert testimony, or if the expert testimony is conflicting, or if there is some other genuine issue of material fact. *Acoustiflex Corp. v. Owens-Corning Fiberglas Corp.,* 572 F.Supp. 936, 937 (N.D.Ill.1983). *See Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc.,* 356 F.2d 442, 448 (7th Cir.1966), *cert. denied,* 384 U.S. 950, 86 S.Ct. 1570, 16 L.Ed.2d 547 (1966); *Freeman v. Hammond Corp.,* 464 F.Supp. 404, 408 (N.D.Ill.1978).

---

**4.** Plaintiff also asserts in its brief that paragraph 11 of the application contains similar language

but the court will not consider it as that page of Exhibit 10 is missing from the court's record.

Under these standards, the court concludes that there is no genuine issue of material fact and the issue of obviousness can be decided as a matter of law. The court would not find it valuable to call Hsieh, Ware and Landay at trial for further explanation of their opinions. Ware and Hsieh's opinion differs from Landay's not as to the veracity of facts but only as to the *legal* conclusion to be drawn from the facts. *Beatrice Foods*, 619 F.2d at 5. The subject matter is relatively simple and the evidence and experts' opinions are easily comprehended, leading to the conclusion that no genuine issue of material fact exists.

Based on the affidavits, exhibits and deposition testimony, the court finds that the design in issue is not obvious from the prior art. Although defendants introduced many graphic illustrations to demonstrate how the prior art *could* be combined to create the invention in suit, they did not persuasively. show that these combinations would have suggested doing what plaintiff did. As Landay's statement puts it, "Each of the [prior art] references ... has an undercarriage that is structurally and visually opposed to the design of [plaintiff's] patent." In addition, Hsieh's prior statements suggest he also found the integrated sole and wheel mounting combination to be a patentable idea. Further, Ware was a co-applicant with Hsieh for the U.S. patent of Hsieh's integrated design. All of these factors suggest that the notion of integration was not obvious.

Having determined that the design in suit is novel and nonobvious, it is concluded that the patent is valid.

## II. INFRINGEMENT OF THE PATENT

The substantive test for determining infringement is akin to the test for novelty. The court need not compare the prior art and imagine an expert's "obvious" combinations thereof. Rather, the test for infringement is "that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Manufacturing Co. v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1872). Minor differences in details, not the kind noticed by experts, but those usually overlooked by ordinary observers, are not sufficient to negate infringement if the general appearance of the design is the same. *Gorham*, 14 Wall. 511, 81 U.S. at 580–81.

Summary judgment for infringement of a patent should be granted only with great caution. *Landau v. J.D. Barter Construction Co.*, 657 F.2d 158, 161 (7th Cir.1981). Summary judgment, where patent infringement is in issue, should be granted only in the clearest cases. *Spiral Step Tool Co. v. Federal Mogul Corp.*, 185 USPQ 768 (N.D.Ill.1975). On the other hand, summary judgment on the issue of infringement is appropriate where the design in question can be easily comprehended. *Continuous Curve Contact Lenses, Inc. v. Rynco Scientific Corp.*, 680 F.2d 605, 607 (9th Cir.1982); *Hart v. Leisure Manufacturing Company*, 201 USPQ 671, 673 (N.D.Ill.1978). "Where ... the designs are of a simple nature, not needing further elucidation, and the Court can affirm by mere comparison that the designs are not the same, the question of infringement is then a matter of law to be decided by the Court and summary judgment is proper." *Summers v. Laubach*, 191 USPQ 114, 118 (D.Kan. 1974). The court again concludes under these standards that no genuine material fact issue is present and that the issue of infringement can be decided as a matter of law.

Having observed the physical exhibits of the skate designs as might the ordinary consumer of roller skates, the court finds that the skates are not substantially the same and that an ordinary consumer would not confuse one for the other. Defendants' skate is different from Brookfield's skate in numerous ways. Defendants' skate has an extra piece of wedging at the heel, creating a discernibly steeper elevation in

the wedge plate, while the plaintiff's skate has a rather gently sloping wedge shape. Further, the defendants' skate has a separate boot sole of uniform thickness in addition to the wedge plate. The plaintiff's skate has no separate boot sole but instead the boot attaches to the wedge plate *directly*. Moreover, the difference in the spacing and roundness of the angled bosses of the wheel mounting plates is apparent, with the defendants' design being more angular and widely spaced. Finally, a bottom view of both physical exhibits reveals the defendants' skate's wedge structure does not span the entire width of the skate at all points along the length of the skate's boot bottom. The plaintiff's skate covers the entire bottom width of the boot. These differences are such that the two designs clearly have distinctive "looks". The plaintiff's skate has a low, racy, highly stable and integrated appeal. The defendants' skate gives the impression of a skate boot precariously attached to a rather narrow wedge plate, creating a less stable effect. The court does not consider these articulated differences in design to be so minor that the ordinary consumer would not discern them.

The court concludes, therefore, that defendants' skate does not infringe plaintiff's design patent.

## III. RED STONE AS A PROPER DEFENDANT FOR INFRINGEMENT

Defendant Red Stone contends that it is not a proper party to be held for infringement of the patent in suit because it has not committed the necessary infringing acts within the United States. Because we have concluded that Red Stone and Chicago are both free of liability for the infringement of the plaintiff's patent, as explained above, this issue need not be decided.

## IV. DEFENDANTS' REQUEST FOR ATTORNEYS' FEES

The defendants have asked for attorneys' fees, arguing this is an extraordinary case because of the plaintiff's spurious motivations in bringing this action and its misuse of the judicial process. The patent laws, 35 U.S.C. § 285 (1982), provide that the court may in exceptional cases award attorney's fees to the prevailing party. An award of attorney's fees is reserved for situations involving misconduct or bad faith such as fraud on the Patent Office, discovery abuse or misrepresentations to the court. *See Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 584 (7th Cir. 1981). Further, the existence of such extraordinary circumstances must be clearly proved to merit an award of attorneys' fees. *Kalkowski v. Ronco, Inc.*, 424 F.Supp. 343, 354 (N.D.Ill.1976). The court should look to the record to determine if the plaintiff's conduct was so vexatious and unjustified as to constitute an exceptional case. *Hyster Co. v. Hunt Foods, Inc.*, 263 F.2d 130, 134 (7th Cir.1959). The action was plainly not meritless or frivolous. Defendants have made little more than conclusory statements regarding the plaintiff's bad faith. We find no basis to award attorneys' fees.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, it is concluded as follows:

1. There is no genuine issue of material fact as to any issue before the court and judgment may be entered as a matter of law.

2. Plaintiff's Design Patent No. 261,542 is novel and nonobvious and therefore valid.

3. The defendants' skate does not infringe the plaintiff's design patent.

4. No basis exists for an award of attorneys' fees to defendants.

Whereupon, it is recommended that defendants' motion for summary judgment be granted and that the application for fees be denied.

Written objections to any finding of fact, conclusion of law, or the recommendation for disposition of this matter must be filed with the Honorable Nicholas J. Bua within ten days after service of this Report and Recommendation. *See* Fed.R.Civ.P. 72(b).

Failure to object may constitute a waiver of objections on appeal.

Respectfully submitted,
/s/ Joan H. Lefkow
JOAN HUMPHREY LEFKOW
United States Magistrate

DATE: November 5, 1984